**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| BRIAN JOSE MORALES GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, RODNEY S. SCOTT, IN HIS OFFICCAL CAPACITY AS COMMISSION, U.S. CUSTOMS AND BORDER PROTECTION; ICE/CBP OFFICER DOES 1-10, IN THEIR PERSONAL AND OFFICIAL CAPACITIES; TEXAS DEPARTMENT OF PUBLIC SAFETY OFFICER DOES 1-10, IN THEIR INDIVIDUAL CAPACITIES; AND GILLESPIE COUNTY SHERIFF DEPUTY 1-10, IN THEIR INDIVIDUAL CAPACITIES,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No. 1:26-cv-01155-RP |

**FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION**
**<u>TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

Defendants Markwayne Mullin, Todd Lyons, and Rodney S. Scott (the "Federal Defendants") file their Response in Opposition to Plaintiff's Motion for Preliminary Injunction.

## <u>Introduction</u>

Plaintiff claims to be a United States citizen who was coerced into disclaiming his United States citizenship and voluntarily departing to Mexico under some manner of pressure or duress. He asks the Court to issue a preliminary injunction ordering the Federal Defendants to permit him

re-entry into the United States pending the resolution of this case. Plaintiff's request should be denied because he is not entitled to the relief he seeks.

**Factual Background**

Plaintiff was detained by the Texas Department of Public Safety ("DPS") following a traffic stop on April 3, 2026, near Fredericksburg, Texas. Dkt. 1 ¶ 2. Plaintiff concedes he did not have any identification on his person at the time of the stop. *Id.* ¶ 29. Immigration officials were contacted, and Plaintiff was thereafter detained at the Gillespie County Jail. *Id.* ¶ 34.

Customs and Border Protection ("CBP") Agent Robert Gil, Jr. encountered Plaintiff at the Gillespie County Jail. Ex. 1, Decl. of Robert Gil, Jr., ¶ 3. He had received information that two aliens had been jailed there and needed to be transferred to Border Patrol custody. *Id.* Agent Gil knew that Plaintiff had previously identified himself to the Border Patrol Intel Agent who issued the immigration detainer as "Bryan Jose Morales-Garcia," with a date of birth of [redacted]. *Id.*

When Agent Gil arrived at the Gillespie County Jail, he spoke with Plaintiff in Spanish because Plaintiff did not speak any English. *Id.* ¶¶ 4-5. Plaintiff stated he had entered the United States using a birth certificate. *Id.* ¶ 5. Agent Gil asked if Plaintiff had his birth certificate, and Plaintiff indicated he did not. *Id.* Agent Gil then asked if Plaintiff had a Social Security number and he said he did not know. *Id.* During this conversation, Plaintiff appeared nervous. *Id.* Agent Gil advised Plaintiff that he was going to check public online records from the Government of Mexico to see if Plaintiff was a citizen of Mexico. *Id.* Agent Gil further advised Plaintiff that if those records indicated he was actually born in Mexico, he could be charged with a crime for providing a false statement. *Id.* At that point, Plaintiff admitted he was born in Zacatecas, Mexico,

and that his real date of birth was [redacted]. *Id.* This conversation between Agent Gil and Plaintiff lasted only 2-3 minutes, was not hostile, and remained professional at all times. *Id.*

Agent Gil ran the information Plaintiff had provided about his name, date of birth, and place of birth through the Mexican Government's public database. *Id.* ¶ 6. Through this search, Agent Gil discovered that Plaintiff was a registered Mexican citizen with a national identity number commonly referred to as a "CURP." *Id.* ¶ 6; Ex. A. The CURP confirmed the details Plaintiff had relayed to Agent Gil. *Id.* Critically, Agent Gil noted that the letters "ZS" appeared in the middle of Plaintiff's CURP identification number, which means Plaintiff was born in Zacatecas. *Id.* (highlighted for reference). Based on his training and experience, Agent Gil knew that when a Mexican citizen is born abroad but then later registers citizenship in Mexico, the letters "NE" appear on the CURP in the location where the "ZS" appears on Plaintiff's CURP. *Id.* The notation "NE" signifies "nacido extranjero," which means "born abroad" in English. *Id.*

Based on Plaintiff's statement that he was born and Mexico and the Mexican records confirming the details of Plaintiff's birth as he stated them, Agent Gil concluded that Plaintiff was an illegal alien who had no lawful documents to enter or remain in the United States. *Id.* ¶ 7. Agent Gil then explained that Plaintiff could either have a hearing before an immigration judge or voluntarily return to Mexico. *Id.* Plaintiff chose to return to Mexico. *Id.* Agent Gil then went over the Form I-877 with Plaintiff to ensure it accurate reflected his decision to voluntarily return to Mexico in lieu of removal proceedings. *Id.*; Ex. B. Plaintiff confirmed his decision and signed it. *Id.* Agent Gil did not threaten or coerce Plaintiff into signing the document or into accepting a voluntary return to Mexico. *Id.*

Agent Gil also provided Plaintiff with a DHS Form I-826 in Plaintiff's native language of Spanish which included a Notice of Rights and Advisals. *Id.* ¶ 8; Ex. C. Plaintiff requested a

voluntary return and signed the I-826 freely and voluntarily. *Id.* Plaintiff was then processed for a voluntary return and spoke with the Mexican consulate during the process. *Id.* Plaintiff was repatriated to Mexico through the Harlingen, Texas port-of-entry on April 7, 2026. *Id.* ¶ 9.

Plaintiff's account of the events differs in significant respects. He claims that he maintained his claim of United States citizenship throughout the duration of his detention. Dkt. 1 ¶ 36. He claims he was threatened with imprisonment if he continued to maintain that his presence in the United States was lawful. *Id.* ¶ 38. Plaintiff claims he falsely told immigration authorities that he was a Mexican national who had entered the country illegally. *Id.* ¶ 39. Plaintiff claims he only made that statement due to the agents' alleged coercion. *Id.*

**Legal Standard**

The purpose of a preliminary injunction is to preserve the relative position of the parties until a trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy," which is never awarded as a right. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). To obtain a preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (per curiam); Fed. R. Civ. P. 65. When the federal government is the opposing party, the third and fourth requirements merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The decision to grant or deny a preliminary injunction is left to the sound discretion of the district court. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "The plaintiff has the burden of introducing sufficient

evidence to justify the grant of a preliminary injunction." *PCI Transportation, Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 546 (5th Cir. 2005).

**Argument & Authority**

Plaintiff cannot show he is entitled to a preliminary injunction. He has not shown he is likely to succeed on the merits of his claims against the Federal Defendants. Specifically, he cannot maintain a *Bivens* action against the defendants sued in their individual capacities. Moreover, he has not pleaded a valid waiver of immunity for his official-capacity claims. Plaintiff also cannot show he will suffer irreparable harm absent an injunction. Nothing prevents Plaintiff from presenting at a port of entry and seeking entrance into the United States if, as he alleges, he has proof that clearly establishes his citizenship. Finally, the balance of harms and the public interest weigh against Plaintiff. Issuing an injunction under these circumstances would open the door to anyone who voluntarily deports to later file a civil action claiming they only did so due to coercion.

## I. Plaintiff has not shown a substantial likelihood of success on the merits of his claims.

The first preliminary-injunction factor—likelihood of success on the merits—is "the most important." *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023). Plaintiff has not established he is likely to succeed on the merits of his claims. The Court should deny his motion on that basis.

### A. *Bivens* does not extend to Plaintiff's individual-capacity claims.

Plaintiff brings *Bivens* claims against ICE/CBP Officer Does 1-10 for (1) detaining Plaintiff without probable cause in violation of the Fourth Amendment; (2) deporting Plaintiff without due process in violation of the Fifth Amendment; (3) eliciting a coerced statement in violation of the Fifth Amendment; and (4) deporting Plaintiff and refusing his re-entry in violation of the Fifth Amendment. Dkt. 1 ¶¶ 57, 68, 79, 87. But *Bivens* claims are only viable in three specific circumstances not presented in this case.

The Supreme Court, in 1971, recognized an implied right of action "to sue federal officers for violating an arrestee's 'rights of privacy' by 'manacl[ing] petitioner in front of his wife and children,' 'threaten[ing] to arrest the entire family,' and strip searching him." *Cantu v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (quoting *Bivens v. Six Unknown Named Agency of Fed. Bureau of Narcotics*, 403 U.S. 388, 389–90 (1971)), *cert. denied*, 141 S. Ct. 112 (2020). During the following nine years, the Supreme Court acknowledged two additional implied causes of action under *Bivens*: A Fifth Amendment equal protection claim by a former staff member against a congressman for discrimination on the basis of sex, *see Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim by an asthmatic prisoner against federal jailers for inadequate medical care while in custody, *see Carlson v. Green*, 446 U.S. 14 (1980).

Since *Carlson*, however, the Supreme Court has consistently rejected "every *Bivens* claim presented to it." *Cantu*, 933 F.3d at 421; *Ziglar v. Abbasi*, 582 U.S. 120, 131–33 (2017) (collecting cases). In fact, the nine years during which the Supreme Court decided *Bivens*, *Davis*, and *Carlson*, "represent[s] the entire lifespan of *Bivens*." *Byrd v. Lamb*, 990 F.3d 879, 883 (5th Cir. 2021) (Willett, J., concurring), *cert. denied*, 142 S. Ct. 2850 (2022). And while the Supreme Court has "emphasized that *Bivens*, *Davis*, and *Carlson* remain good law," it has stated that the *Bivens* trilogy is "the byproduct of an 'ancien regime,'" *Cantu*, 933 F.3d at 421 (quoting *Abbasi*, 582 U.S. at 131), "that freely implied rights of action." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2669 (2021). Indeed, the Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Abbasi*, 582 U.S. at 135).

Thus, the Supreme Court has developed a two-part test to determine whether a *Bivens* claim may proceed. *Egbert*, 596 U.S. at 493. First, a court must ask whether the plaintiff's claim

"presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* Second, if it is, the court asks whether there are "special factors counselling hesitation" in extending the *Bivens* remedy. *Abbasi*, 582 U.S. at 136. These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citations omitted).

**i. Plaintiff's claims present a new *Bivens* context.**

Plaintiff's claims do not fall within the three specific factual scenarios to which a *Bivens* remedy may extend. Aside from the specific scenarios in *Bivens*, *Davis*, and *Carlson*, "[v]irtually everything else is a 'new context.'" *Oliva*, 973 F.3d at 442 (citations omitted). That is because even a modest extension of the *Bivens* trilogy "'is still an extension.'" *Id.*

Meaningful differences that can signal a new context include: (1) the rank of the officers involved; (2) the constitutional right at issue; (3) the generality or specificity of the official action; (4) the extent of judicial guidance as to how an officer should respond; (5) the statutory or other legal mandate under which the officer was operating; (6) the risk of disruptive intrusion by the judiciary into the functioning of other branches; or (7) the presence of special factors that previous *Bivens* cases did not consider. *Cantu*, 933 F.3d at 423. Furthermore, a *Bivens* claim may meaningfully differ from the *Bivens* trilogy even if the plaintiff asserts "a claim under the . . . same clause of the same amendment in the same way" and even if the "'mechanism of injury was the same mechanism of injury in a previous *Bivens* case.'" *Id.* at 422 (quoting *Abbasi*, 582 U.S. at 139).

The Fifth Circuit has expressly declined to extend a *Bivens* remedy to the civil immigration context. *In De La Paz v. Coy*, for example, two illegal aliens were apprehended by CBP agents during two different traffic stops. 786 F.3d 367, 370–71 (5th Cir. 2015). Both were interrogated by agents and asked if they were United States citizens. *Id.* After agents concluded they were not, the plaintiffs were apprehended. *Id.* They later filed suit alleging, among other causes of action, *Bivens* claims against the agents for unlawfully stopping and arresting them. *Id.* at 371.

The Fifth Circuit concluded that *Bivens* does not extend to claims arising from civil immigration apprehensions and detentions. *Id.* at 375. Crucial to the court's determination was the existence of the Immigration & Nationality Act's ("INA") "elaborate remedial scheme" to protect the rights of illegal aliens. *Id.* In a later, post-*Abbasi* decision, The Fifth Circuit considered a *Bivens* action with allegations similar to those in this case. *See Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778 (5th Circuit 2019). There, the plaintiff, on behalf of her deceased daughter, brought a due process claim alleging that her daughter had been coerced into selecting the voluntary return option on the Form I-826 after being apprehended. *See id.* at 781–83. The Fifth Circuit concluded, "[t]here is no question that this case involves a "new context . . . ." *Id.* at 784.

This case, also arising from the civil immigration context, is meaningfully different from *Bivens* and thus presents a new context. For example, "the statutory or other legal mandate under which the officer[s] [were] operating" is distinct. *Abbasi*, 582 U.S. at 140. Agents in this case were enforcing civil immigration laws, whereas the defendants in *Bivens* were enforcing criminal law. *Id.* "Immigration enforcement is by its nature addressed toward noncitizens, which raises a host of considerations and concerns that are simply absent in the majority of tradition law enforcement contexts." *Tun-Cos v. Perrotte*, 922 F.3d 514, 524 (4th Cir. 2019). Additionally, this case involves a new category of defendants. The *Abbasi* Court "refused to extend Bivens to any new category of

defendants," providing examples such as "federal employer[s]," "military officers," "Social Security officials," a "federal agency," a "private prison operator," officials from the Bureau of Land Management," and "prison guard at a private prison." *Abbasi*, 582 U.S. at 135. This case, too, involves a new category of defendants—CBP agents charged with enforcement of the immigration laws.

**ii. Special factors counsel against extending *Bivens* to this new context.**

Where, as here, a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether "special factors" counsel against inferring such a cause of action in the absence of "affirmative action by Congress." *Abbasi*, 582 U.S. at 121. The "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 137. Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

Several special factors counsel against extending a *Bivens* remedy to this new context. As the Fifth Circuit explained in *De La Paz*, "[d]espite its repeated and careful attention to immigration matters, Congress has declined to authorize damage remedies against individual agents involved in civil immigration enforcement. The institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function." 786 F.3d at 377. Additionally, "judicial meddling in immigration matters is particularly violative of separation-of-powers principles because the Constitution gives the political branches "broad, undoubted power

over the subject of immigration." *Garza*, 912 F.3d at 784–85 (quoting *Arizona v. United States*, 567 U.S. 387, 394 (2012)).

Moreover, creating a damages remedy against CBP agents in this context would "yield a tidal wave of litigation." *De La Paz*, 786 F.3d at 379. In fact, the Fifth Circuit specifically noted the danger of extending a *Bivens* remedy to the very type of claims involved in this case:

> If we were to extend a remedy in this case, any aliens selecting "voluntary removal" on Form I-826 could subsequently sue on the theory that CBP agents coerced their signatures. Many of these claims would involve a he-said-she-said scenario, making them difficult to dismiss on summary judgment and costly to litigate. The danger of such litigation would, in turn, likely force CBP to change policies and procedures, even to adopt excessive precautions to prevent potential liability. Whatever the effect of such changes, the crucial point is that the consideration of policy changes is "for the Congress, not the Judiciary, to undertake.

*Garza*, 912 F.3d at 785 (quoting *Hernandez v. Mesa*, 885 F.3d 811, 821 (5th Cir 2018)). As the Court is aware, a "tidal wave" of immigration litigation is no longer a mere possibility. The Court's docket is currently flooded with immigration habeas petitions. While the legal issues are different in this case, the reality is the same. If this legal avenue is opened, every person who disagrees with a citizenship determination made by immigration officials would be permitted to seek emergency relief in federal district court and obtain a hearing within days, bypassing both the State Department and the immigration courts.

In sum, this case undoubtedly presents a new *Bivens* contest, and numerous special factors counsel against extending a *Bivens* remedy to this new context. Plaintiff, therefore, is not likely to succeed on his *Bivens* claims.

**B. Plaintiff has not pleaded any waiver of immunity to support his official-capacity claims.**

Plaintiff is also not likely to succeed on his official-capacity claims because he has not pleaded any waiver of immunity that would allow him to bring those claims.

Absent a waiver, sovereign immunity protects the federal government and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The plaintiff has the burden to "affirmatively and distinctly plead jurisdiction in a federal court" and establish that the United States has waived its sovereign immunity. *Ezell v. Dep't of the Army*, No. 5:16-CV-938, 2017 WL 2671091, at *2 (W.D. Tex. Jun. 20, 2017). "Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Meyer*, 510 U.S. at 475 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Thus, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Along with his *Bivens* claims, Plaintiff brings official-capacity claims for injunctive relief against Defendants Mullin, Lyons, and Scott, for alleged violations of the Fourth and Fifth Amendment. Dkt 1 ¶¶ 56, 67, 78, 86. Plaintiff has not demonstrated the Court has jurisdiction to consider those claims. There is no independent factual basis for Plaintiff's official-capacity claims aside from the factual allegations encompassed by Plaintiff's *Bivens* claims. To the extent Plaintiff brings these claims under a theory of respondeat superior, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Because Plaintiff sues Mullin, Lyons, and Scott in their supervisory capacities only and alleges no personal involvement on their part, *Bivens* cannot serve as a basis of liability for his official-capacity claims. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). Additionally, *Bivens* is limited to monetary relief and does not authorize injunctive relief. *See Patel v. Santana*, 348 F. App'x 974, 976 (5th Cir. 2009).

To the extent Plaintiff brings standalone Fourth and Fifth Amendment official-capacity claims outside the *Bivens* context, he has not pleaded any waiver of immunity that would allow the Court to entertain those claims. The text of the United States Constitution contains no waiver of immunity. *See Garcia v. U.S.*, 666 F.2d 960, 966 (5th Cir. 1982). Plaintiff asserts that the Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-02. Dkt. 1 ¶ 8. But general jurisdictional statutes, like § 1331, do not waive sovereign immunity. *Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987). Likewise, the Declaratory Judgment Act (§§ 2201-02) only conveys subject matter jurisdiction in cases where it already exists, and it does not waive sovereign immunity. *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997). Plaintiff is therefore not likely to succeed on his official-capacity claims because he has not pleaded any waiver of immunity.

**C. Plaintiff has not presented sufficient evidence to justify a preliminary injunction.**

Even if Plaintiff's claims were legally viable, he has not presented sufficient evidence to justify a preliminary injunction. Plaintiff argues he is likely to succeed on the merits of his claims because the birth certificate, Social Security card, and baptismal certificate attached to his motion confirm he was born in the United States and is thus a United States citizen. Dkt. 1 ¶ 50; Dkts. 1-1, 1-2, 1-3. But the totality of the evidence at this stage casts doubt on that assertion.

The name and date of birth that appears on Plaintiff's Denver birth certificate is different than the name and date of birth Plaintiff gave to Agent Gil. On his birth certificate, his first name appears as "Brian." Dkt. 1-1. The name he gave Agent Gil was "Bryan." The Social Security card attached to Plaintiff's motion has a handwritten notation reading "2021 brayan" appearing above the image of the card that reads "Brian."

After Plaintiff admitted to being born in Zacatecas, Mexico, he gave Agent Gil his name, "Bryan," and the date-of-birth [redacted]. This is different than the date of birth Plaintiff gave earlier in his encounter with law enforcement officials, [redacted], that appeared on the immigration detainer, and which appears on Plaintiff's Denver birth certificate.[1] When Agent Gil entered "Bryan" Jose Morales Garcia, the [redacted] date of birth, and Zacatecas (the location provided by Plaintiff) as the place of birth, it generated a CURP for an individual named "Bryan Jose Morales Garcia," who was born on [redacted] in Zacatecas. Had this individual been born in the United States, the CURP would have reflected that with the notation "NE" instead of "ZS"—which means born in Zacatecas.

In an attempt to reconcile this conflicting information, undersigned counsel reached out to Plaintiff's counsel to request any hospital birth records that would support a credible claim of citizenship. But the single page provided raised more questions than it answered. The record purports to be from a "Brian Matilde Garcia," a different name from the one that appears on any records provided in support of Plaintiff's motion and from any Mexican records thus far discovered. *See* Ex. 2. It also has no information about who the parents were for Brian Matilde Garcia. *Id.*

If the argument is that Plaintiff is likely to proceed on the merits of his claims (notwithstanding the insurmountable legal hurdles previously discussed) because the evidence clearly demonstrates he is a United States citizen, that argument cannot be squared with the evidence before the Court. Accordingly, even assuming Plaintiff's claims were properly before the Court, Plaintiff has not presented sufficient evidence to support his claims. Because Plaintiff

[1] The undersigned has confirmed with Plaintiff's counsel that the date of birth appearing on the Denver birth certificate is [redacted].

cannot demonstrate a substantial likelihood of success on the merits of his claims, the Court should deny his motion for a preliminary injunction and need not consider the remaining factors. *See La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 225 (5th Cir. 2010).

**II. Plaintiff has not demonstrated a substantial threat of irreparable harm.**

Merits aside, Plaintiff has not demonstrated a substantial threat of irreparable harm absent the requested injunction. He claims that he suffers harm "[e]very additional day Plaintiff is excluded from the United States." Dkt. 1 ¶ 51. The problem: Plaintiff has not shown that he has been excluded from the United States.

There is nothing preventing Plaintiff from presenting at a port of entry or applying for a passport. Plaintiff merely speculates that he that he *might* be refused admission into the United States at some point in the future *if* he attempts reentry. Dkt. 1 ¶ 52. However, "[a]n injunction may thus be issued only if future injury is 'certainly impending.'" *Aransas Project v. Shaw*, 775 F.3d 641, 663–64 (5th Cir. 2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Plaintiff's claim of irreparable harm is "quintessential speculation" that is insufficient to show a reasonably certain threat of imminent harm. *See Friends of Lydia Ann Channel v. United States Army Corps of Eng'rs*, 701 F. App'x 352, 357 (5th Cir. 2017). If Plaintiff is in fact denied entry, he has an adequate and recognized remedy through the immigration courts, where questions of citizenship are regularly adjudicated. Alternatively, should Plaintiff's request for a United States passport be denied, he may pursue a remedy pursuant to 8 U.S.C. § 1503(a).

**III. The balance of equities and the public interest weigh against Plaintiff.**

Finally, the balance of equities and the public interest cut against preliminary relief as well. The executive has a strong interest being able to enforce the laws of the United States absent micro-managing by the judicial branch. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (noting

that the executive's "most important constitutional duty" is to "take Care that the Laws be faithfully executed." (quoting U.S. Const. art. II, § 3). And as observed by the Fifth Circuit, the executive would encounter substantial harm if a *Bivens* remedy is extended to this new context. *See De La Paz*, 786 F.3d at 380 ("Extending *Bivens* actions to millions of illegal aliens could cripple immigration enforcement with the distraction, cost, and delay of lawsuits, even as it exposed enforcement officers to personal liability for simply doing their job."). The harm to Plaintiff, by contrast, is minimal—especially considering he elected to voluntarily depart and is not prevented from attempting reentry with the documents he claims establish his citizenship.

**<u>Conclusion</u>**

Plaintiff has not met his burden to show he is entitled to a preliminary injunction. The Court, therefore, should deny his motion.

Dated: May 21, 2026

Respectfully submitted,

**Justin R. Simmons**
United States Attorney

By: */s/ Landon A. Wade*
**Landon A. Wade**
Assistant United States Attorney
State Bar No. 24098560
U.S. Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 370-1255 (phone)
(512) 916-5854 (fax)
landon.wade@usdoj.gov

**Christina L. Playton**
Assistant United States Attorney
Texas Bar. No. 24028652
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100 (phone)
(210) 384-7118 (fax)
christina.playton@usdoj.gov

***Attorney for Defendants***
***United States of America***

## CERTIFICATE OF SERVICE

I certify that on May 21, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record in this case.

*/s/ Landon A. Wade*
Landon A. Wade
Assistant United States Attorney