**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRIAN JOSE MORALES GARCIA,**<br>*Plaintiff*,<br><br>**v.**<br><br>**MARKWAYNE MULLIN, in his official capacity as Secretary, U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; RODNEY S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Protection; ICE/CBP OFFICER DOES 1-10, in their personal and official capacities; TEXAS DEPARTMENT OF PUBLIC SAFETY OFFICER DOES 1-10, in their individual capacities; and GILLESPIE COUNTY SHERIFF DEPUTY 1-10, in their individual capacities,**<br>***Defendants*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CASE NO. 1:26-CV-01155-RP** |

**<u>CHIEF DEPUTY BRYAN PHILIPS' RULE 12(B)(6) MOTION TO DISMISS</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN:

To the extent that Plaintiff can be deemed to have effectuated service of process on Gillespie County Chief Deputy Bryan Philips ("Chief Deputy Philips") who is NOT named as a Defendant in this lawsuit, Chief Deputy Philips files this Rule 12(b)(6) Motion to Dismiss in response to Plaintiff Brian Jose Morales Garcia's Complaint for Declaratory, Injunctive Relief, Damages, and Other Relief ("Complaint").

## I.
## PROCEDURAL BACKGROUND

1. This action arises out of the April 3, 2026, traffic stop by an officer of the Texas Department of Public Safety ("DPS") and arrest of Plaintiff Brian Jose Morales Garcia ("Plaintiff")

by officers of Immigration and Customs Enforcement ("ICE"). The arrest ultimately resulted in Plaintiff's deportation to Mexico by ICE.

2. On May 1, 2026, Plaintiff filed his Complaint in which he asserted a Section 1983 claim against Gillespie County Sheriff Deputy Does 1-10, in their individual capacities. (*See* Doc. 1, ¶¶ 96-107). Plaintiff's Section 1983 claim incorporates alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights. (*See* Doc. 1, ¶¶ 96-107).

3. On May 7, 2026, summons was issued to "Gillespie County Sheriff Deputy 1-10, in the individual capacity." (*See* Doc. 11, p. 3). While Chief Deputy Philips' name does not appear anywhere in Plaintiff's Original Complaint (*see* Doc. 1), Plaintiff attempted to effectuate service on the unnamed Gillespie County Sheriff Deputy Does 1-10 by personally serving Chief Deputy Philips. (*See* Doc. 18). Plaintiff then filed a Return of Service which states in part:

> I, Jim Guyton, do hereby affirm that on the 7th day of May, 2026 at 4:30 pm, I:
>
> INDIVIDUALLY/PERSONALLY served … Chief Deputy Bryan Phzzdps ….

The return of service does not purport to have effectuated service upon a Defendant in this lawsuit but only to have served Chief Deputy Bryan Phzzdps. (*See* Doc. 18).

4. On May 29, 2026, Defendants Gillespie County Sheriff Deputy 1-10 filed Defendants Gillespie County Sheriff Deputy 1-10's Rules 12(b)(4) and 12(b)(5) Motion to Quash Service ("Motion to Quash"). (*See* Doc. 19). In the Motion to Quash, Defendants, "without appearing in [the] lawsuit," moved the Court to quash service based on the defective attempt to serve Gillespie County Sheriff Deputy Does 1-10 by personally serving Chief Deputy Philips. (*See* Doc. 19).

5. On June 17, 2026, the Court entered an order quashing Plaintiff's service on Chief Deputy Philips. (*See* Doc. 25). As recognized in the Court's order, "Plaintiff cannot properly *serve*

'Doe defendants' such as the Doe Deputies while their identities remain unknown." (Doc. 25 at 2).

6. At present, Plaintiff has not identified the Gillespie County Sheriff Deputy Does 1-10. (*See* Doc. 33, ¶ 4).

7. As set forth below, to the extent Plaintiff intended to name Chief Deputy Philips as a Defendant and/or effectuate service of process on him, his allegations are insufficient to survive dismissal under Rule 12(b)(6). As a threshold matter, Plaintiff's Complaint does not name Chief Deputy Philips as a defendant. The Complaint sues only unidentified Gillespie County Sheriff Deputy Does 1-10 and therefore asserts no claim against him. Further, Plaintiff has not alleged any personal involvement by Chief Deputy Philips for which he could be liable under Section 1983. Finally, and in the alternative, if he were named as a defendant in this suit, Chief Deputy Philips would be entitled to qualified immunity because Plaintiff cannot show that Chief Deputy Philips violated any of Plaintiff's constitutional rights.

## II.
## LEGAL STANDARD

8. Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The first step of the 12(b)(6) analysis is to separate the complaint's legal conclusions—which do not receive a presumption of truth—from its factual allegations. *See id.* at 678-79. Once the legal conclusions are set aside, the remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

9. If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "Where the well-pleaded facts do not permit the court to infer more than . . . [a] possibility of misconduct, the complaint has alleged but . . . has not shown that the pleader is entitled to relief," and, therefore, should be dismissed. *Id.* (citation modified) (quoting Fed. R. Civ. P. 8(a)(2)). A court is not required to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Philips*, 401 F.3d 638, 642 (5th Cir. 2005)); *see also Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) ("'conclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss.") (quoting *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

## III.
## ARGUMENTS & AUTHORITIES

### A. Because Plaintiff Has Neither Named nor Served Chief Deputy Philips, Plaintiff Has Failed to State a Claim Against Him.

5. As an initial matter, Plaintiff does not name Chief Deputy Philips as a defendant. Under Federal Rule of Civil Procedure 10, "[t]he title of the complaint must name all parties." Fed. R. Civ. P. 10(a). Here, Plaintiff's Complaint lists only unidentified "GILLESPIE COUNTY SHERIFF DEPUTY 1-10, in their individual capacities." (*See* Doc. 1 at 1). The Complaint describes these defendants as "unknown Gillespie County Sheriff officers, agents, officials, and/or contractors" whose "true names, titles, capacities, and degree of responsibility are presently unknown to Plaintiff." (*See* Doc. 1, ¶ 18). Further, it states that "Plaintiff will amend this Complaint to identify these defendants when their identities are ascertained." (*See* Doc. 1, ¶ 18). Plaintiff has

not done so. In fact, Plaintiff has represented to the Court that he cannot identify the Gillespie County deputies involved until he conducts discovery. (*See* Doc. 33, ¶ 4).

6. A doe designation is a placeholder, not a party. *See Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir. 1987) ("[T]he mere naming of a person through use of a fictitious name does not make that person a party absent voluntary appearance or proper service of process."); *Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007) ("[T]he use of a 'John Doe'…serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants."). Plaintiff has not amended his Complaint to name any specific individuals as a defendant against whom a claim has been asserted.

7. Further, Plaintiff has failed to serve Chief Deputy Philips. A person becomes an official party to the lawsuit, and is obliged to defend it, only upon service of a summons. *Murphy Bros. v. Mitchetti Pipe Stringing*, 526 U.S. 344, 350 (1999). Under Federal Rule of Civil Procedure 4, a summons must name the defendant to whom it is directed and must be served together with a copy of the complaint. Fed. R. Civ. P. 4(a)(1)(B); Fed R. Civ. P. 4(c)(1). No summons naming Chief Deputy Philips has been issued or served.[1] Therefore, because the Complaint neither names nor has been served upon Chief Deputy Philips, Plaintiff asserts no claim against him upon which relief can be granted. Accordingly, the Court should dismiss Plaintiff's claims against Chief Deputy Philips.

### B. Plaintiff Fails to Establish an Individual-Capacity Section 1983 Claim Against Chief Deputy Philips.

8. Assuming, arguendo, the Court were to treat Chief Deputy Philips as a defendant, the Complaint fails to state a claim against him. A Section 1983 claim cannot be maintained against

---

[1] The June 17, 2026, Order (Doc. 25) quashed the defective service on Chief Deputy Philips.

a supervisory official solely based on vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987); *Torns v. City of Jackson*, 622 Fed. Appx. 414, 417 (5th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-93 (1978)). To hold a supervisory official liable under Section 1983, a plaintiff must demonstrate that the supervisory official was personally involved in the alleged constitutional deprivation, or that the supervisory official implemented unconstitutional policies that causally resulted in the alleged constitutional violation. *Snow v. City of El Paso*, 501 F. Supp. 2d 826, 835 (W.D. Tex. 2006). Further, "a plaintiff must demonstrate that the supervisor official acted with deliberate indifference, 'which requires proof that the supervisor disregarded a known or obvious consequence of his action.'" *Id.*

9. The Complaint satisfies none of these requirements. The Complaint is completely devoid of any allegation of Chief Deputy Philips' personal involvement in Plaintiff's stop, arrest, or detention. In fact, the only allegations specific to Gillespie County personnel—and, notably, not specific to Chief Deputy Philips—are that deputies were called "to assist with translation" and Plaintiff was booked into the Gillespie County Jail. (*See* Doc. 1, ¶¶ 30, 34). Every other allegation is directed collectively at "officers," "Defendants," or "Defendants' agents" without identifying which agency, let alone which individual, did what. (*See* Doc 1, ¶¶ 31, 33-34, 103). Indeed, Plaintiff concedes that the identities and "degree of responsibility" of the Gillespie County deputies involved are "presently unknown" to him. (*See* Doc. 1, ¶ 18). Consequently, Plaintiff's collective references are insufficient to state an individual-capacity Section 1983 claim against Chief Deputy Philips. *See Armstrong v. Ashley*, 60 F.4th 262, 270-71 (5th Cir. 2023) (affirming dismissal of suppression claim where allegations failed to "distinguish the perpetrators" and did not specify which defendant was responsible for the challenged conduct).

10. Likewise, the Complaint is devoid of any allegation that Chief Deputy Philips implemented an unconstitutional policy that caused the alleged constitutional violation or that he

acted with deliberate indifference. (*See* Doc. 1). The Complaint's sole "pattern" allegation concerns "aggressive immigration enforcement" by federal agents nationwide. (*See* Doc. 1, ¶ 49). That alleged pattern cannot be attributed to Gillespie County policy, let alone to any policy implemented by Chief Deputy Philips. Accordingly, Plaintiff's claims against Chief Deputy Philips in his individual capacity should be dismissed.

**C. In the Alternative, Plaintiff's Section 1983 Claim is Barred by Qualified Immunity.**

11. The doctrine of qualified immunity shields government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability," and "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

12. In the Fifth Circuit, it is well established that, once a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate that: (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232; *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). The Court may address these prongs in either order. *Pearson*, 555 U.S. at 236. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," *id.*, and "a court may rely on either prong of the

defense in its analysis." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Finally, the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. See *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (explaining that "[q]ualified immunity shields from liability all but the plainly incompetent or those who knowingly violate the law." (internal quotations omitted)).

13. Here, Plaintiff does not allege that Chief Deputy Philips violated any of the constitutional rights incorporated into Count 5. Plaintiff's Fifth Amendment theory fails because the alleged coercion is attributed to federal agents, not to Chief Deputy Philips. Moreover, the allegedly coerced statement was never used against Plaintiff in a criminal proceeding. Plaintiff's Fourteenth Amendment theory fails because his alleged pretrial deprivation of liberty must be analyzed, if at all, under the Fourth Amendment. Finally, Plaintiff's Fourth Amendment theory fails because Chief Deputy Philips is not alleged to have participated in the stop, the stop was lawful, Plaintiff's holding in jail was at the express direction of ICE, and Chief Deputy Philips was not constitutionally required to independently resolve Plaintiff's claim of citizenship. Accordingly, Plaintiff's Section 1983 claim is barred by qualified immunity.

**a. Because He Was Never Criminally Prosecuted, Plaintiff Fails to Allege a Violation of His Fifth Amendment Right.**

14. Plaintiff's Section 1983 claim incorporates alleged violations of Plaintiff's Fifth Amendment rights. (*See* Doc. 1 ¶ 98). This theory fails for two reasons.

15. First, to the extent Plaintiff pleads a Fifth Amendment self-incrimination claim through the Fourteenth Amendment, the claim fails. The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, requires that "no person…shall be compelled *in any criminal case* to be a *witness* against himself." *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (internal citations omitted). "A Section 1983 claim under the Fifth Amendment does not exist unless

unlawfully obtained testimony is introduced against a plaintiff in *criminal* proceedings." *Cox v. Mitchell*, No. DR:25-CV-00023-EG-MHW, 2026 U.S. Dist. LEXIS 97486, at *9 (W.D. Tex. Mar. 17, 2026) (emphasis added).

16. In Count 5, Plaintiff alleges that Gillespie County Sheriff Deputy 1-10, among others, caused the alleged Fifth Amendment self-incrimination violation (*see* Doc. 1, ¶ 98)—the coercion of an allegedly false statement that was then used to support Plaintiff's removal. (*See* Doc. 1, ¶¶ 79-81). However, Plaintiff does not allege that the statement was ever used against him in a criminal proceeding. A deportation proceeding is a "purely civil action." *Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). Thus, Plaintiff has not plausibly alleged under Section 1983 that his Fifth Amendment right against self-incrimination was violated. *See Mitchell*, LEXIS 97486 at *10.

17. Second, Plaintiff fails to allege any coercive conduct by Chief Deputy Philips. Plaintiff has pled no facts to show that Chief Deputy Philips was personally involved in the alleged coercive interrogation. The Complaint instead attributes the alleged threats to "agents of the United States government." (*See* Doc. 1, ¶¶ 38-40). Consequently, absent any personal involvement, Plaintiff has failed to establish a violation by Chief Deputy Philips of Plaintiff's Fifth Amendment right against self-incrimination. *See James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) ("A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.").

**b. Plaintiff's Fourteenth Amendment Claim Must Proceed, If At All, Under the Fourth Amendment.**

18. The Fifth Circuit has explained, "the Supreme Court has warned against vague or general assertions of constitutional rights and has required a § 1983 plaintiff to state with specificity the constitutional right that has been allegedly violated—otherwise, liability could be

imposed in every case." *Sanchez v. Swyden*, 139 F.3d 464, 466–67 (5th Cir. 1998) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Here, Plaintiff alleges that Gillespie County Sheriff Deputy 1-10, among others, deprived him of "the rights, benefits, emoluments, and liberty of his U.S. citizenship" under the Fourteenth Amendment. (*See* Doc. 1, ¶ 99). Plaintiff's contention fails as a matter of law.

19. The Complaint does not allege that Chief Deputy Philips was involved in any of the events that occurred after Plaintiff was transferred to federal custody. (*See* Doc. 1, ¶¶ 35-44). Thus, to the extent Plaintiff's Fourteenth Amendment theory is directed at Chief Deputy Philips, it could only concern the alleged pretrial deprivation. Plaintiff alleges: "[t]here was no reasonable suspicion nor probable cause to support seizure, arrest or detention of Plaintiff." (*See* Doc. 1, ¶ 102). Such allegation implicates the Fourth Amendment, not the Fourteenth Amendment.

20. Citing *Albright v. Oliver*, the Fifth Circuit has explained that pretrial deprivations of liberty are better analyzed under the Fourth Amendment than the Fourteenth Amendment because "where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment' not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims." *Castellano v. Fragozo*, 352 F.3d 939, 946 (5th Cir. 2003) (quoting *Albright*, 510 U.S. at 273). Accordingly, because Plaintiff's Section 1983 claim concerns an alleged pretrial deprivation of liberty, his claim must proceed, if at all, under the Fourth Amendment, and his Fourteenth Amendment theory should be dismissed.

**c. Plaintiff Cannot Establish that a Fourth Amendment Violation Occurred.**

***i. Plaintiff Alleges No Fourth Amendment Conduct by Chief Deputy Philips.***

21. As set forth in Section III.B of this Motion, the Complaint alleges no personal involvement by Chief Deputy Philips in Plaintiff's stop, arrest, or detention. (*See* Doc. 1). Plaintiff alleges DPS made the stop. (*See* Doc. 1, ¶ 28). Moreover, the closest reference to county personnel is the allegation that "Gillespie County Sheriff's deputies and officers" assisted with translation and that Plaintiff was booked into the Gillespie County Jail. (*See* Doc. 1, ¶¶ 30, 34). The remainder of Count 5 refers to "Defendants" generally and is devoid of any factual allegations specific to any involvement by Chief Deputy Philips himself. Accordingly, Chief Deputy Philips cannot be held liable under Section 1983 for a stop that he did not initiate and in which he is not alleged to have participated. *See Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) ("[T]o state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.").

***ii. Even if the Court Attributes the Stop to Chief Deputy Philips, the Stop and Subsequent Hold of Plaintiff Were Lawful.***

22. Even if the stop could be attributed to Chief Deputy Philips, it was lawful. A traffic stop is justified under the Fourth Amendment where an officer has reasonable suspicion of a traffic violation. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). Reasonable suspicion is "'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." *Id.* (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)). An observed traffic violation justifies a stop, no matter what the officer's subjective motive was. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (stating that the reasonableness of a traffic stop does not depend on the actual motivation of the individual officers involved).

23. Plaintiff alleges that the vehicle in which he was a passenger was stopped for a window tint violation. (*See* Doc. 1, ¶ 28). Under Texas law, operating a vehicle with a window tint that does not comport with the standard prescribed in the statute is a misdemeanor offense. Tex. Transp. Code § 547.613. Plaintiff does not allege that the vehicle's windows complied with Section 547.613 nor does he allege any facts suggesting that there was no objective basis to believe a tint violation had occurred. Plaintiff's bare assertion that there was "no reasonable suspicion" for the stop is a legal conclusion that the Court need not accept. (*See* Doc. 1, ¶ 102); *Iqbal*, 556 U.S. at 678. Likewise, Plaintiff's allegation that he was stopped and detained "based on his apparent ethnicity and inability to speak English" is irrelevant to the Fourth Amendment analysis, because an objectively justified stop is reasonable regardless of the officer's subjective motivation. (*See* Doc. 1 ¶ 103); *Whren*, 517 U.S. at 813. Accordingly, Plaintiff has failed to plausibly allege that the stop was unlawful.

24. Moreover, Plaintiff's subsequent hold does not support a Fourth Amendment claim because, by Plaintiff's own account, he was held at the direction of ICE. Plaintiff alleges that ICE agents "instructed [officers] to hold Plaintiff." (*See* Doc. 1, ¶ 31). Texas law forbids a local entity from prohibiting or materially limiting immigration-enforcement activities. *City of El Cenizo v. Texas*, 890 F.3d 164, 173-74 (5th Cir. 2018). Amongst these activities, a local entity may not "prohibit or materially limit" its officers from "assisting or cooperating with a federal immigration officer as reasonable or necessary, including providing enforcement assistance." Tex. Gov't Code § 752.053(b)(3). The prohibition in Section 752.053 applies to any "local entity" which includes a county and its officers and employees. Tex. Gov't Code § 752.051(5). Accordingly, Plaintiff's hold at the express direction of ICE, pending transfer to federal custody, cannot plausibly support a Fourth Amendment violation against Chief Deputy Philips.

25. Further, while Plaintiff contends that Defendants acted wrongfully by failing to verify his claims of citizenship (*see* Doc. 1, ¶¶ 33-34), there was no constitutional duty to resolve Plaintiff's claims. "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Baker v. McCollan*, 443 U.S. 137, 145 (1979) (quoting *Patterson v. New York*, 432 U.S. 197, 208 (1977)). In *Baker*, the Court held that a three-day detention despite the detainee's protests of mistaken identity did not violate the Constitution. *Id.* at 143-46. In the same manner, Chief Deputy Philips had no duty to verify Plaintiff's claims of citizenship where Plaintiff lacked identification.

26. Accordingly, because Plaintiff has not plausibly alleged that Chief Deputy Philips committed any Fourth Amendment violation, Plaintiff's Section 1983 claim is barred by qualified immunity.

## IV.
## CONCLUSION & PRAYER

Wherefore, premises considered, Chief Deputy Bryan Philips, without appearing in this lawsuit, respectfully prays that, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court enter an order dismissing Plaintiff's claim against Chief Deputy Philips and grant him all other relief to which he may be justly entitled.

Respectfully submitted,

**MICHAEL BEST & FRIEDRICH LLP**
515 Congress Avenue, Suite 2500
Austin, Texas 78701
512.320.0601 (telephone)
512.640.3170 (telecopier)
michael.shaunessy@michaelbest.com
julie.denny@michaelbest.com

By: */s/ Michael Shaunessy*
MICHAEL SHAUNESSY
State Bar No. 18134550

***Attorney for Chief Deputy Bryan Phillips***

## CERTIFICATE OF SERVICE

I hereby certify that, on the 20th day of November, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and, further, that CM/ECF provided service of such filing on the following party by electronic mail:

Chad W. Dunn
BRAZIL & DUNN
1900 Pearl Street
Austin, Texas 78705
chad@brazilanddunn.com
***Attorneys for Plaintiff***

K. Scott Brazil
BRAZIL & DUNN
13231 Champion Forest Drive, Suite 406
Houston, Texas 77069
scott@brazilanddunn.com
***Attorneys for Plaintiff***

Dicky Grigg
LAW OFFICE OF DICKY GRIGG, PC
1900 Pearl Street
Austin, Texas 78705
dicky@grigg-law.com
mel@grigg-law.com
***Attorneys for Plaintiff***

Kate Lincoln-Goldfinch
LINCOLN GOLDFINCH LAW
4417 Westlake Drive
Austin, Texas 78746
kate@lincolngoldfinch.com
***Attorneys for Plaintiff***

Landon A. Wade
ASSISTANT UNITED STATES ATTORNEY
U.S. ATTORNEY'S OFFICE
903 San Jacinto Boulevard, Suite 334
Austin, Texas 78701
landon.wade@usdog.gov
***Attorneys for Markwayne Mullin, Todd Lyons, and Rodney S. Scott***

Christina L. Playton
ASSISTANT UNITED STATES ATTORNEY
U.S. ATTORNEY'S OFFICE
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
christina.playton@usdog.gov
***Attorneys for Markwayne Mullin, Todd Lyons, and Rodney S. Scott***

*<u>/s/ Michael Shaunessy</u>*
MICHAEL SHAUNESSY