**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| BRIAN JOSE MORALES GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, RODNEY S. SCOTT, IN HIS OFFICCAL CAPACITY AS COMMISSION, U.S. CUSTOMS AND BORDER PROTECTION; ICE/CBP OFFICER DOES 1-10, IN THEIR PERSONAL AND OFFICIAL CAPACITIES; TEXAS DEPARTMENT OF PUBLIC SAFETY OFFICER DOES 1-10, IN THEIR INDIVIDUAL CAPACITIES; AND GILLESPIE COUNTY SHERIFF DEPUTY 1-10, IN THEIR INDIVIDUAL CAPACITIES,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No. 1:26-cv-01155-RP |

**<u>FEDERAL DEFENDANTS' MOTION TO DISMISS</u>**

Defendants Markwayne Mullin, Todd Lyons, and Rodney S. Scott (the "Federal Defendants") file their Motion to Dismiss and respectfully submit the following:

## <u>Introduction</u>

Plaintiff is a dual citizen of the United States and Mexico. After being detained by the Texas Department of Public Safety ("DPS") following a traffic stop, Plaintiff gave immigration authorities biographical information about himself that matched the details of his Mexican

registration documents. He stated he was born in Mexico and requested to return to Mexico. After his voluntary return to Mexico, Plaintiff filed suit, claiming that he was a United States citizen and was unlawfully coerced into stating he was not a United States citizen. Since that time, Plaintiff obtained information verifying his citizenship and returned to the United States.

Plaintiff seeks monetary relief through a *Bivens* claim, but his claim is not cognizable under the facts of this case. Plaintiff also seeks injunctive and declaratory relief but does not plead any waiver of immunity that would authorize him to bring those claims. Plaintiff's claims should therefore be dismissed for failure to state a claim and for lack of jurisdiction.

**<u>Factual Background</u>**

Plaintiff was detained by the Texas Department of Public Safety ("DPS") following a traffic stop on April 3, 2026, near Fredericksburg, Texas. Dkt. 1 ¶ 2. Plaintiff concedes he did not have any identification on his person at the time of the stop. *Id.* ¶ 29. Immigration officials were contacted, and Plaintiff was thereafter detained at the Gillespie County Jail. *Id.* ¶ 34.

Customs and Border Protection ("CBP") Agent Robert Gil, Jr. encountered Plaintiff at the Gillespie County Jail. Dkt.12-1 ¶ 3. He had received information that two aliens had been jailed there and needed to be transferred to Border Patrol custody. *Id.* Agent Gil knew that Plaintiff had previously identified himself to the Border Patrol Intel Agent who issued the immigration detainer as "Bryan Jose Morales-Garcia," with a date of birth in March 2001. *Id.*

When Agent Gil arrived at the Gillespie County Jail, he spoke with Plaintiff in Spanish because Plaintiff did not speak any English. *Id.* ¶¶ 4-5. Plaintiff stated he had entered the United States using a birth certificate. *Id.* ¶ 5. Agent Gil asked if Plaintiff had his birth certificate, and Plaintiff indicated he did not. *Id.* Agent Gil then asked if Plaintiff had a Social Security number and he said he did not know. *Id.* During this conversation, Plaintiff appeared nervous. *Id.* Agent

Gil advised Plaintiff that he was going to check public online records from the Government of Mexico to see if Plaintiff was a citizen of Mexico. *Id.* Agent Gil further advised Plaintiff that if those records indicated he was actually born in Mexico, he could be charged with a crime for providing a false statement. *Id.* At that point, Plaintiff admitted he was born in Zacatecas, Mexico, and that his real date of birth was in February 2001. *Id.* This conversation between Agent Gil and Plaintiff lasted only 2-3 minutes, was not hostile, and remained professional at all times. *Id.*

Agent Gil ran the information Plaintiff had provided about his name, date of birth, and place of birth through the Mexican Government's public database. *Id.* ¶ 6. Through this search, Agent Gil discovered that Plaintiff was a registered Mexican citizen with a national identity number commonly referred to as a "CURP." *Id.* ¶ 6; Ex. A. The CURP confirmed the details Plaintiff had relayed to Agent Gil. *Id.* Critically, Agent Gil noted that the letters "ZS" appeared in the middle of Plaintiff's CURP identification number, which means Plaintiff was born in Zacatecas. *Id.* (highlighted for reference). Based on his training and experience, Agent Gil knew that when a Mexican citizen is born abroad but then later registers citizenship in Mexico, the letters "NE" appear on the CURP in the location where the "ZS" appears on Plaintiff's CURP. *Id.* The notation "NE" signifies "nacido extranjero," which means "born abroad" in English. *Id.*

Based on Plaintiff's statement that he was born and Mexico and the Mexican records confirming the details of Plaintiff's birth as he stated them, Agent Gil concluded that Plaintiff was an illegal alien who had no lawful documents to enter or remain in the United States. *Id.* ¶ 7. Agent Gil then explained that Plaintiff could either have a hearing before an immigration judge or voluntarily return to Mexico. *Id.* Plaintiff chose to return to Mexico. *Id.* Agent Gil then went over the Form I-877 with Plaintiff to ensure it accurate reflected his decision to voluntarily return to Mexico in lieu of removal proceedings. *Id.*; Ex. B. Plaintiff confirmed his decision and signed it.

*Id.* Agent Gil did not threaten or coerce Plaintiff into signing the document or into accepting a voluntary return to Mexico. *Id.*

Agent Gil also provided Plaintiff with a DHS Form I-826 in Plaintiff's native language of Spanish which included a Notice of Rights and Advisals. *Id.* ¶ 8; Ex. C. Plaintiff requested a voluntary return and signed the I-826 freely and voluntarily. *Id.* Plaintiff was then processed for a voluntary return and spoke with the Mexican consulate during the process. *Id.* Plaintiff was repatriated to Mexico through the Harlingen, Texas port-of-entry on April 7, 2026. *Id.* ¶ 9.

Plaintiff's account of the events differs in significant respects. He claims that he maintained his claim of United States citizenship throughout the duration of his detention. Dkt. 1 ¶ 36. He claims he was threatened with imprisonment if he continued to maintain that his presence in the United States was lawful. *Id.* ¶ 38. Plaintiff claims he falsely told immigration authorities that he was a Mexican national who had entered the country illegally. *Id.* ¶ 39. Plaintiff claims he only made that statement due to the agents' alleged coercion. *Id.*

After this litigation commenced, and based on Plaintiff's claim to citizenship, counsel for Federal Defendants and counsel for Plaintiff began working together to gather information concerning Plaintiff's place of birth. *See* Dkt. 27. As a result of those efforts and negotiations between the parties, Plaintiff was permitted entry into the United States on August 30, 2026. Dkt. 33.

## Legal Standard

The sufficiency of a pleading to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) is evaluated under the two-step process outlined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, the Court must identify the complaint's factual allegations, which are assumed to be true, and

distinguish them from statements of legal conclusion, which are not. *Iqbal*, 556 U.S. at 678, 680-81. "[A] plaintiff's 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Poloceno v. Dallas Indep. Sch. Dist.*, 826 F. App'x 359, 361 (5th Cir. 2020) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). Second, the Court must assess whether the assumed-as-true factual allegations set forth a plausible claim for relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to determine whether "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal*, 556 U.S. at 679. Ultimately, the claim is subject to dismissal if it lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed . . . with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing" other arguments. *Id.* "[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotation marks omitted).

## **Argument & Authority**

Plaintiff's claims against Federal Defendants must be dismissed. *Bivens* does not authorize a damages remedy under the factual circumstances of this case. Plaintiff therefore cannot maintain

a *Bivens* claim against the as-yet unidentified and unserved ICE/CBP officers sued in their individual capacities. Plaintiffs remaining, official-capacity claims against Federal Defendants must be dismissed as well. Plaintiff does not plead any waiver of immunity that would authorize constitutional claims against the official-capacity Federal Defendants.

## I. Plaintiff fails to state a *Bivens* claim.

Plaintiff brings *Bivens* claims against ICE/CBP Officer Does 1-10 for (1) detaining Plaintiff without probable cause in violation of the Fourth Amendment; (2) deporting Plaintiff without due process in violation of the Fifth Amendment; (3) eliciting a coerced statement in violation of the Fifth Amendment; and (4) deporting Plaintiff and refusing his re-entry in violation of the Fifth Amendment. Dkt. 1 ¶¶ 57, 68, 79, 87. But *Bivens* claims are only viable in three specific circumstances not presented in this case.

The Supreme Court, in 1971, recognized an implied right of action "to sue federal officers for violating an arrestee's 'rights of privacy' by 'manacl[ing] petitioner in front of his wife and children,' 'threaten[ing] to arrest the entire family,' and strip searching him." *Cantu v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (quoting *Bivens v. Six Unknown Named Agency of Fed. Bureau of Narcotics*, 403 U.S. 388, 389–90 (1971)), *cert. denied*, 141 S. Ct. 112 (2020). During the following nine years, the Supreme Court acknowledged two additional implied causes of action under *Bivens*: A Fifth Amendment equal protection claim by a former staff member against a congressman for discrimination on the basis of sex, *see Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim by an asthmatic prisoner against federal jailers for inadequate medical care while in custody, *see Carlson v. Green*, 446 U.S. 14 (1980).

Since *Carlson*, however, the Supreme Court has consistently rejected "every *Bivens* claim presented to it." *Cantu*, 933 F.3d at 421; *Ziglar v. Abbasi*, 582 U.S. 120, 131–33 (2017) (collecting

cases). In fact, the nine years during which the Supreme Court decided *Bivens*, *Davis*, and *Carlson*, "represent[s] the entire lifespan of *Bivens*." *Byrd v. Lamb*, 990 F.3d 879, 883 (5th Cir. 2021) (Willett, J., concurring), *cert. denied*, 142 S. Ct. 2850 (2022). And while the Supreme Court has "emphasized that *Bivens*, *Davis*, and *Carlson* remain good law," it has stated that the *Bivens* trilogy is "the byproduct of an 'ancien regime,'" *Cantu*, 933 F.3d at 421 (quoting *Abbasi*, 582 U.S. at 131), "that freely implied rights of action." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2669 (2021). Indeed, the Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Abbasi*, 582 U.S. at 135).

Thus, the Supreme Court has developed a two-part test to determine whether a *Bivens* claim may proceed. *Egbert*, 596 U.S. at 493. First, a court must ask whether the plaintiff's claim "presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* Second, if it is, the court asks whether there are "special factors counselling hesitation" in extending the *Bivens* remedy. *Abbasi*, 582 U.S. at 136. These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citations omitted).

**i. Plaintiff's claims present a new *Bivens* context.**

Plaintiff's claims do not fall within the three specific factual scenarios to which a *Bivens* remedy may extend. Aside from the specific scenarios in *Bivens*, *Davis*, and *Carlson*, "[v]irtually everything else is a 'new context.'" *Oliva*, 973 F.3d at 442 (citations omitted). That is because even a modest extension of the *Bivens* trilogy "'is still an extension.'" *Id.*

Meaningful differences that can signal a new context include: (1) the rank of the officers involved; (2) the constitutional right at issue; (3) the generality or specificity of the official action; (4) the extent of judicial guidance as to how an officer should respond; (5) the statutory or other legal mandate under which the officer was operating; (6) the risk of disruptive intrusion by the judiciary into the functioning of other branches; or (7) the presence of special factors that previous *Bivens* cases did not consider. *Cantu*, 933 F.3d at 423. Furthermore, a *Bivens* claim may meaningfully differ from the *Bivens* trilogy even if the plaintiff asserts "a claim under the . . . same clause of the same amendment in the same way" and even if the "'mechanism of injury was the same mechanism of injury in a previous *Bivens* case.'" *Id.* at 422 (quoting *Abbasi*, 582 U.S. at 139).

The Fifth Circuit has expressly declined to extend a *Bivens* remedy to the civil immigration context. *In De La Paz v. Coy*, for example, two illegal aliens were apprehended by CBP agents during two different traffic stops. 786 F.3d 367, 370–71 (5th Cir. 2015). Both were interrogated by agents and asked if they were United States citizens. *Id.* After agents concluded they were not, the plaintiffs were apprehended. *Id.* They later filed suit alleging, among other causes of action, *Bivens* claims against the agents for unlawfully stopping and arresting them. *Id.* at 371.

The Fifth Circuit concluded that *Bivens* does not extend to claims arising from civil immigration apprehensions and detentions. *Id.* at 375. Crucial to the court's determination was the existence of the Immigration & Nationality Act's ("INA") "elaborate remedial scheme" to protect the rights of illegal aliens. *Id.* In a later, post-*Abbasi* decision, The Fifth Circuit considered a *Bivens* action with allegations similar to those in this case. *See Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778 (5th Cir. 2019). There, the plaintiff, on behalf of her deceased daughter, brought a due process claim alleging that her daughter had been coerced into selecting the

voluntary return option on the Form I-826 after being apprehended. *See id.* at 781–83. The Fifth Circuit concluded, "[t]here is no question that this case involves a "new context . . . ." *Id.* at 784.

This case, also arising from the civil immigration context, is meaningfully different from *Bivens* and thus presents a new context. For example, "the statutory or other legal mandate under which the officer[s] [were] operating" is distinct. *Abbasi*, 582 U.S. at 140. Agents in this case were enforcing civil immigration laws, whereas the defendants in *Bivens* were enforcing criminal law. *Id.* "Immigration enforcement is by its nature addressed toward noncitizens, which raises a host of considerations and concerns that are simply absent in the majority of traditional law enforcement contexts." *Tun-Cos v. Perrotte*, 922 F.3d 514, 524 (4th Cir. 2019). Additionally, this case involves a new category of defendants. The *Abbasi* Court "refused to extend *Bivens* to any new category of defendants," providing examples such as "federal employer[s]," "military officers," "Social Security officials," a "federal agency," a "private prison operator," officials from the Bureau of Land Management," and "prison guards at a private prison." *Abbasi*, 582 U.S. at 135. This case, too, involves a new category of defendants—CBP agents charged with enforcement of the immigration laws.

**ii. Special factors counsel against extending Bivens to this new context.**

Where, as here, a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether "special factors" counsel against inferring such a cause of action in the absence of "affirmative action by Congress." *Abbasi*, 582 U.S. at 121. The "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and

correcting a wrong." *Id.* at 137. Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

Several special factors counsel against extending a *Bivens* remedy to this new context. As the Fifth Circuit explained in *De La Paz*, "[d]espite its repeated and careful attention to immigration matters, Congress has declined to authorize damage remedies against individual agents involved in civil immigration enforcement. The institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function." 786 F.3d at 377. Additionally, "judicial meddling in immigration matters is particularly violative of separation-of-powers principles because the Constitution gives the political branches "broad, undoubted power over the subject of immigration." *Garza*, 912 F.3d at 784–85 (quoting *Arizona v. United States*, 567 U.S. 387, 394 (2012)).

Moreover, creating a damages remedy against CBP agents in this context would "yield a tidal wave of litigation." *De La Paz*, 786 F.3d at 379. In fact, the Fifth Circuit specifically noted the danger of extending a *Bivens* remedy to the very type of claims involved in this case:

> If we were to extend a remedy in this case, any aliens selecting "voluntary removal" on Form I-826 could subsequently sue on the theory that CBP agents coerced their signatures. Many of these claims would involve a he-said-she-said scenario, making them difficult to dismiss on summary judgment and costly to litigate. The danger of such litigation would, in turn, likely force CBP to change policies and procedures, even to adopt excessive precautions to prevent potential liability. Whatever the effect of such changes, the crucial point is that the consideration of policy changes is "for the Congress, not the Judiciary, to undertake.

*Garza*, 912 F.3d at 785 (quoting *Hernandez v. Mesa*, 885 F.3d 811, 821 (5th Cir 2018)). If this legal avenue is opened, every person who disagrees with a citizenship determination made by immigration officials would be permitted to seek emergency relief in federal district court and obtain a hearing within days, bypassing both the State Department and the immigration courts.

In sum, this case undoubtedly presents a new *Bivens* contest, and numerous special factors counsel against extending a *Bivens* remedy to this new context. Because Plaintiff fails to state a *Bivens* claim, it should be dismissed pursuant to Rule 12(b)(6).

**II. The Court lacks jurisdiction over Plaintiff's official-capacity claims against Federal Defendants.**

Plaintiff's official-capacity claims against Federal Defendants must be dismissed because Plaintiff has not pleaded any waiver of immunity that would allow him to bring those claims.

Absent a waiver, sovereign immunity protects the federal government and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The plaintiff has the burden to "affirmatively and distinctly plead jurisdiction in a federal court" and establish that the United States has waived its sovereign immunity. *Ezell v. Dep't of the Army*, No. 5:16-CV-938, 2017 WL 2671091, at *2 (W.D. Tex. Jun. 20, 2017). "Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Meyer*, 510 U.S. at 475 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Thus, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Along with his *Bivens* claims, Plaintiff brings official-capacity claims for injunctive relief against Defendants Mullin, Lyons, and Scott, for alleged violations of the Fourth and Fifth Amendment. Dkt 1 ¶¶ 56, 67, 78, 86. Plaintiff has not demonstrated the Court has jurisdiction to consider those claims. There is no independent factual basis for Plaintiff's official-capacity claims aside from the factual allegations encompassed by Plaintiff's *Bivens* claims. To the extent Plaintiff brings these claims under a theory of respondeat superior, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Because Plaintiff sues Mullin, Lyons, and Scott in

their supervisory capacities only and alleges no personal involvement on their part, *Bivens* cannot serve as a basis of liability for his official-capacity claims. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). Additionally, *Bivens* is limited to monetary relief and does not authorize injunctive relief. *See Patel v. Santana*, 348 F. App'x 974, 976 (5th Cir. 2009).

To the extent Plaintiff brings standalone Fourth and Fifth Amendment official-capacity claims outside the *Bivens* context, he has not pleaded any waiver of immunity that would allow the Court to entertain those claims. The text of the United States Constitution contains no waiver of immunity. *See Garcia v. U.S.*, 666 F.2d 960, 966 (5th Cir. 1982). Plaintiff asserts that the Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-02. Dkt. 1 ¶ 8. But general jurisdictional statutes, like § 1331, do not waive sovereign immunity. *Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987). Likewise, the Declaratory Judgment Act (§§ 2201-02) only conveys subject matter jurisdiction in cases where it already exists, and it does not waive sovereign immunity. *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997). The Court should therefore dismiss Plaintiff's official-capacity claims for lack of jurisdiction because they are barred by sovereign immunity.[1]

**Conclusion**

For the foregoing reasons, all claims against Federal Defendants should be dismissed with prejudice.

---

[1] Moreover, since Plaintiff has obtained the injunctive relief he requested—admittance into the United States—his claims for injunctive relief are also moot.

Dated: November 20, 2026

Respectfully submitted,

**Justin R. Simmons**
United States Attorney

By: */s/ Landon A. Wade*

**Landon A. Wade**
Assistant United States Attorney
State Bar No. 24098560
U.S. Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 370-1255 (phone)
(512) 916-5854 (fax)
landon.wade@usdoj.gov

**Christina L. Playton**
Assistant United States Attorney
Texas Bar. No. 24028652
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100 (phone)
(210) 384-7118 (fax)
christina.playton@usdoj.gov

***Attorney for Defendants***
***United States of America***